# Hartenstine, Appellant, v. United Telephone & Telegraph Company.

*Negligence—Electric law—Telephone and telegraph companies—Master and servant—Fellow servant.*

In an action against a telephone and telegraph company to recover damages for death of plaintiff's husband, a judgment for defendant will be sustained where the evidence shows that the deceased at the time of his death was employed by the defendant in stringing wires, that his death was caused by a wire which he was stringing coming in contact with a heavily charged wire of an electric light company, and that the accident was caused either by the negligence of fellow workmen in manipulating the wire with a rope supplied by the defendant which was apparently long enough for the purpose, or by the failure of the foreman of the gang to take from the defendant's supply store, where a sufficient supply of rope was kept, an amount thereof sufficient for the work in hand.

Prescott v. Ball Engine Co., 176 Pa. 459, followed.

*Negligence—Electric law—Telephone and telegraph companies—Rubber gloves—Failure to provide.*

The failure of a telephone and telegraph company to supply rubber gloves to an employee cannot be set up as negligence upon its part where it appears that the proximate cause of the employee's death was the negligence of a fellow servant.

Argued Feb. 5, 1907. Appeal, No. 5, Jan. T., 1907, by plaintiff, from judgment of C. P. Montgomery Co., Oct. T., 1905, No. 119, for defendant non obstante veredicto in case of Delila Hartenstine v. United Telephone and Telegraph Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, and STEWART, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before SWARTZ, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*William P. Young,* with him *H. Wilson Stahlnecker,* for appellant.—The case was for the jury: Turton v. Powelton

Electric Co., 185 Pa. 406; Butterman v. McClintic-Marshall Construction Co., 206 Pa. 82; Lewis v. Seifert, 116 Pa. 628; Penna., etc., Canal & R. R. Co. v. Mason, 109 Pa. 296; Schiglizzo v. Dunn, 211 Pa. 253; Bannon v. Lutz, 158 Pa. 166; Esher v. R. R. & Mining Co., 28 Pa. Superior Ct. 387; Stapleton v. Traction Co., 5 Pa. Superior Ct. 253.

*Irvin P. Knipe*, with him *Irving P. Wanger*, for appellee.— The employer, who provides at his storehouse a sufficiency of sound rope, is not liable for the consequences of an employee's failure to take enough rope for the work in hand, or for an employee's selection of unsound rope: Prescott v. Ball Engine Co., 176 Pa. 459; Kinney v. Corbin, 132 Pa. 341; Hughes v. Leonard, 199 Pa. 123.

OPINION BY MR. JUSTICE BROWN, October 21, 1907:

At the time the husband of appellant was killed by an electric shock he was helping to string wires for the appellee. He was employed as a reelman. A wire from his reel and that from one alongside of it were fastened to a running board to which a rope was attached. This running board kept the wires apart and prevented their twisting as they were carried over the arms of the poles. When a pole was reached the lineman carried the rope up to a cross-arm and threw it down on the other side. A man on the ground would then carry the rope forward, pulling the wires to the cross-arm, and when the running board reached a cross-arm a man on the pole would fasten it on the pegs, so as to keep the wires back of him tight. Slack wires in the rear might have sagged and come in contact with heavily charged electric wires beneath them. The wires of the appellee were being strung six or eight feet above heavily charged wires belonging to another company—The Pottstown Light, Heat and Power Company. These lower wires were on some of appellee's poles. Before the deceased and his fellow workmen began to string the wires they were all instructed to keep them taut, to prevent their touching the highly charged wires beneath them. The principal witness for the plaintiff so testifies. According to the finding of the jury, the wires of the appellee, which were being reeled off, were allowed to sag at a certain point and touch the dangerous

wires, carrying a deadly current to the deceased, whose hand was on the wire at the reel.   The verdict was for the plaintiff, but judgment was entered for the defendant, non obstante veredicto, and from it there is this appeal.   One of the reasons, and the first, given by the court below for its judgment is the absence of any proof of defendant's negligence.   From an examination of the evidence the conclusion is unavoidable that the proximate cause of the death was the negligence of fellow workmen of the deceased.

When pole "97" was reached the running board was not kept at its cross-arm and from that point pulled over the pole "141" of The Pottstown Electric Light Company, which had to be crossed or passed to reach pole "96" of the appellee. After the running board had passed over the cross-arm of pole "97" it was pulled down to the ground and fastened to a fence at some point between that pole and pole "141" of the other company.   The rope was then taken up pole "141," thrown down and taken up pole "96," and thence thrown down. Dellar, one of the linemen, stood at the running board by the fence, loosened it and called to Kulp, another employee, who had the rope to run.   As the latter ran and pulled the rope the running board flew up into the air and the wire in the rear slacked, causing a contact, according to plaintiff's theory, with the electric light wires, and carrying to the reel the current which killed appellant's husband.   All of the experts and experienced workmen on both sides testified that the running board should not have been carried to the ground and fastened to the fence, but been pulled directly from pole to pole, and that the method which was used by the fellow workmen of the deceased in stringing the wires from pole "97" to pole "96" was improper and very dangerous.

On the trial the appellant rested her case on the insufficiency of the rope supplied by the appellee, her contention being that its shortness compelled the workmen to adopt the method of stringing the wires from pole "97" to "96."   The length of the rope, as proved by plaintiff, was 150 feet, and the distance from pole "97" to "96" having been 137 feet, the rope was not of sufficient length to extend from a cross-arm on the first-named pole over to one on the other, and thence down to the ground; but the learned trial judge, in his opinion directing

judgment for the defendant, clearly demonstrated that it was not necessary to string the wires between these two poles in the dangerous method adopted, even if the rope was but 150 feet in length.   As to this he properly says : "The plaintiff proves that the rope was 150 feet long.   The running board was on pole '97.'   To take the wire to pole '96' it was necessary to climb up the electric light pole '141.'   This was in fact the way the work was done.   This pole was only 103 feet from '97.'   If Kulp had taken the rope to '141' he could have taken it over '141' and dropped it to the ground while the running board remained fast at pole '97.'   The rope was at least seven feet longer than was necessary to do the work in that way, for the electric light pole was less than forty feet high to the arm that had to be crossed.   The wires of the defendant were forty feet above the ground, the electric wires eight or ten feet lower, so that a rope 103 plus 30, or 133 feet long, was all that was necessary to do the work in a proper way. That it could have been done in this way is admitted by the plaintiff's witness Kulp.   But it matters not what the witness may say, there can be no other conclusion.   It is demonstrated to an absolute verity."

Even if the rope used by the workmen was too short to enable them to string the wires in a safe and proper manner, the appellee was not responsible for its shortness, for in the storehouse at Phœnixville from which Massey, the foreman, took it, there was more than 300 feet of rope.   If the piece which he took from the sufficient supply furnished by the company was too short, it was his fault that the workmen did not have a piece of sufficient length ; and under all of our cases he was but a fellow workman of the deceased.   The company had furnished all the rope that was needed to so string the wires as to prevent their sagging, and the workmen had access to it. If one of them took too little, when he could have taken enough, the company is not to be blamed for not having supplied enough.   In Prescott v. Ball Engine Co., 176 Pa. 459, we said : "If good ropes were in stock, and a poor one was used because of haste, or carelessness, or mistaken judgment, it was not the fault of the rigger as vice principal, but of the workmen themselves; and the injury suffered because of the use of the unsuitable rope could not give the injured person a

cause of action against his employer." So, here, if sufficient rope was in the storehouse, and an insufficient piece was taken out and attached to the running board by one of the workmen, the use of the insufficient piece gives no cause of action against the employer. This is all there is in the case, notwithstanding appellant's numerous contentions before us. One of them may be noticed. It is that the appellee ought to have furnished rubber gloves to the deceased, which would have acted as insulators to protect him from the current on the wire at his reel. The proximate cause of his death was not the omission to furnish these gloves. Even if the jury, under the evidence, could have found that they would have been insulators, the direct cause of death was the negligence of fellow employees. If the wires had been strung in a safe and proper manner, as they could have been strung with the rope supplied by the appellee, there would have been no need to insulate the hands of the reelman, for no current could have got on the wire he was unreeling. The appellee having supplied sufficient rope to enable the workmen to safely string the wires, had a right to assume that they would do so. No duty rested upon it to anticipate that some of its employees might be negligent and to provide appliances for the protection of another employee from their possible negligence. No such burden was upon it as an employer.

The assignments of error are all overruled, and the judgment is affirmed.